In re ARROW AIR, INC., Debtor.

**UNITED STATES of America,**
**Appellant,**

v.

**ARROW AIR, INC., Appellee.**

No. 88–1538–CIV.

Bankruptcy No. 88–00340–BKC–AJC.

United States District Court,
S.D. Florida.

Feb. 8, 1989.

U.S. Attys. Office, Miami, Theresa E. Mitchell, Sp. Asst., Tax Div., Washington, Paul E. Pelletier, Trial Atty., for U.S.

David M. Levine, Tew Jordan & Schulte, Miami, Fla., for Creditors Committee.

David C. Profilet, Weil, Gotshal & Manges, Miami, Fla., for Arrow Air, Inc.

## MEMORANDUM OPINION

SCOTT, District Judge.

The sole issue on appeal is whether the Government is entitled to post-confirmation interest on its priority tax claim, pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code. The bankruptcy court determined that the deferred payment by the debtor of the priority tax claim of the Government after the effective date of the plan was not a "deferred cash payment" within the meaning of § 1129(a)(9)(C) and therefore

the United States was not entitled to post-confirmation interest. We reverse.

## BACKGROUND

This is an appeal from a Memorandum Decision of the United States Bankruptcy Court for the Southern District of Florida. 89 B.R. 961. The United States is the Appellant-creditor. Arrow Air, Inc. is the Appellee-debtor. This Court has jurisdiction pursuant to 28 U.S.C. § 158. The bankruptcy court's decision outlined the pertinent history of this proceeding:

On February 11, 1986, Arrow Air filed its voluntary petition for relief under chapter 11, title 11, United States Code. On June 18, 1986, the United States of America, Department of Treasury, Internal Revenue Service ("United States" or "IRS") timely filed a proof of claim in Arrow Air's bankruptcy in the aggregate amount of $125,669.00 for certain pre-petition, federal excise and withholding taxes and interest and penalties thereon, asserting priority under 11 U.S.C. § 507(a)(6) for part of the amount claimed.

By order dated April 29, 1987, the Court confirmed Arrow Air's Amended Plan of Reorganization (the "Plan"). The Plan provides with respect to the claim of the IRS, inter alia, that it is not impaired and the allowed amount of the IRS's claim will be paid in cash, in full on the Effective Date of the Plan or as soon thereafter as is feasible. The Plan further provides that Arrow Air would have sixty days from the Effective Date to interpose objections to the allowance of claims of the type filed by the IRS, unless such time was extended by order of this Court. The Court extended to September 30, 1987 the time for Arrow Air to file objections and on September 30, 1987, Arrow Air filed and served an objection to the claim of the IRS. On December 3, 1987, the Court heard Arrow Air's objection to the claim of the IRS and by order dated December 8, 1987 denied the objection without prejudice for failure by Arrow Air to effect proper service on the United States under Bankruptcy Rule 7004.

Thereafter, on February 17, 1988, the IRS amended its proof of claim by filing an amended proof of claim for pre-petition, federal excise and withholding taxes and interest and penalties thereon in the aggregate amount of $92,106.70, asserting secured status under 11 U.S.C. § 506(a) to the extent that the IRS was holding a refund due Arrow Air in the amount of $30,046.97 for the quarter ending December 31, 1986, and priority status under 11 U.S.C. § 507(a)(7) for the balance. The amended proof of claim stated: "For the purposes of section 506(b) of the Bankruptcy Code, post petition interest may be payable." No party in interest has objected to the IRS's amended proof of claim, and therefore the claim is deemed allowed pursuant to 11 U.S.C. § 502(a).

Pursuant to its Plan, Arrow Air sought ex parte an order authorizing it to disburse from the Creditors' Fund established under the Plan payment of the unsecured priority portion of the IRS's claim, $62,059.77. By order dated March 16, 1988, the Court granted Arrow Air's motion, stating: "Arrow Air, Inc. is authorized to disburse from the Creditors' Fund in payment and satisfaction of the Class III Priority Claim of the IRS, claim number 5469, the amount of $62,059.77."

On March 30, 1988, the United States served its Motion to Alter and Amend the Court's March 16, 1988 order authorizing Arrow Air to pay the claim of the IRS, alleging that the payment of the amount permitted would not fully satisfy the claim because the amount did not include "interest due on both the secured and unsecured portions of said claim pursuant to Bankruptcy Code Sections 506(b) and 1129(a)(9)(C), respectively." For the reasons set forth below, I conclude that the IRS is not entitled to post-petition interest on its tax claims and deny the motion of the United States to alter and amend.

From this order, the United States appeals.[1]

## LEGAL DISCUSSION

The Government argues on appeal "... that when a Chapter 11 debtor provides in a plan of reorganization for payment of a priority tax claim subsequent to the effective date of the plan, said payment, as a matter of law, is a deferred cash payment within the meaning of Section 1129(a)(9)(C) of the Code, thereby entitling the United States to interest on its claim during the deferral period." Brief of the Appellant, p. 5.[2] In turn, this contention can be divided into two sub-issues: (a) Is Section 1129(a)(9)(C) applicable to this case? (b) Are distributions to prior tax claimants deferred cash payments? We will consider each question in turn.

### A. Is 1129(a)(9)(C) applicable to this case?

■ The Government's sole authority for its claim for entitlement to post-confirmation interest is 11 U.S.C. § 1129(a)(9)(C). Section 1129(a)(9)(C) states in relevant part:

(a) The court shall confirm a plan only if all of the following requirements are met:

.     .     .     .     .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

.     .     .     .     .

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

The Appellee argues that Section 1129(a)(9)(C) does not apply to this situation

because the failure to comply with the requirements of Section 1129 is a basis for objection to the confirmation of a plan, but not to the manner in which a plan is administered. Appellee cites to *In Re Pharmadyne Laboratories, Inc.*, 53 B.R. 517, 522 (Bankr.D.N.J.1985). In *Pharmadyne*, the Court opined,

Section 1129(a)(9)(C) is inapplicable here ... that section does not bear upon how a plan is to be administered, but rather on how a plan must be drawn to be eligible for confirmation. The I.R.S. questions whether the plan is being administered properly where no post-contribution interest is paid, not whether it was properly drafted and confirmed.

The IRS responds that it has no quarrel with the *Pharmadyne* decision,

... however, [it] is inapposite for one simple reason—Pharmadyne concerned a liquidating Chapter 11 Plan wherein the debtor agreed to pay priority tax claims "to the extent there are funds available for payment" after the payment of superior claims. There was no promise of full payment of the priority tax and the United States did not object to the confirmation of the plan. Therefore, the court correctly ruled that the Government could not invoke the interest payment provision of Section 1129(a)(9)(C). Brief of Appellant, p. 22 f/n 8.

In this case, the Government points out the plan provides in paragraph 4.03 that the IRS's claim "shall be paid from the Creditors' Fund the allowed amount of such claim on the Effective Date of this Plan ..." In addition, the plan created a "Creditors' Fund" to pay creditors' claims. The plan further states that priority tax claims would be paid "in cash in full to the holder of such claims."

The IRS argues that the real issue is whether by promising to pay the priority claims of the Government "in full" under the language of the plan, Appellee guaranteed payment in the manner provided by

---

**1.** Since this appeal involves solely a legal issue, the standard of review is *de novo.*

**2.** The Government has abandoned on appeal another argument it advanced to the Bankruptcy Court, i.e., that it was entitled to post-petition interest under 11 U.S.C. § 506(b). In light of

the statutory language in Section 506 and the Supreme Court's recent decision in *United Savings Assn. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Government's decision appears to be well-founded.

Section 1129(a)(9)(C). We agree with the Government on this issue. In reaching this conclusion, we rely heavily upon the opinion *In Re Fawcett*, 758 F.2d 588, 590–591 (11th Cir.1985) (and cases cited therein) which held under a less compelling factual scenario that a debtor was required to pay the Government post-petition interest on its secured claim where the plan of reorganization called for payment "in full—100%." [3] We now turn to the second question.

**B. Are distributions to the priority tax claimants deferred cash payments?**

The lower court answered this question in the negative relying upon a decision by another bankruptcy judge in *In Re Pharmadyne Laboratories, Inc.*, 53 B.R. 517, 522 (Bankr.D.N.J.1985). As with the first issued posited, this Court opts to consider this issue anew. While *Pharmadyne* provides some precedent, we decline to place the authoritative value the lower court did. The relevant portions of *Pharmadyne* consists of exactly two paragraphs.[4] There is no citation of authority and really very little analysis. In short, we glean nothing of value from *Pharmadyne* other than the Government lost the issue.

The genesis of our decision lies in the plan itself. Arrow Air's plan of reorganization makes no reference to "deferred cash payments." Paragraph 6.06 of the plan governs the payments to be made pursuant to the plan. It states:

*On the Effective Date of the Plan or as soon thereafter as is feasible*, the Creditors' Fund, exclusive of reserves for Disputed Claims and Pending Claims ... shall be disbursed, subject to the approval of the Bankruptcy Court, by Reorganized Arrow in the following manner and order of priority:

. . . . .

(b) All Class III Priority Claims shall be satisfied *by payment in cash in full to the holders of such allowed Claims.* (Emphasis supplied.)

The plan calls for payment on the effective date of the plan or soon thereafter as is feasible. It also calls for payment in cash in full.

The debtor did not make full payment on the effective date of the plan, April, 1987. Instead, after obtaining extensions, it objected to the IRS claim in September, 1987, some five months later. The bankruptcy court denied the objections, in December, 1987, now some eight months delayed. Finally, payment was made of $62,059.77 in March, 1988, a full eleven months after the effective date of confirmation of the plan.

By objecting to the IRS claim for priority taxes, the IRS was denied full payment on the effective date of the plan, or as soon thereafter as is feasible.[5] Because the payment was due after the confirmation date, the eleven month delay in payment was a "deferred cash payment."

Deferred cash payment in Bankruptcy Code Section 1129(a)(9)(C) has been defined to mean "periodic payments, the interval of which is determined by balancing the circumstances of the debtor with the reasonable right of the creditor to receive prompt payment of its claim." *In Re Mason and Dixon Lines, Inc.*, 71 B.R. 300, 303 (Bankr.

---

**3.** "We concede that the Government's claim could have been more specific with regard to post-petition interest. However, the plan itself could have been more specific by explicitly excluding 'post-petition interest,' rather than simply stating that secured claims would be paid in full—100%. Under these facts we fault the debtor any ambiguity, not the creditor. The crucial point is that the plan was confirmed by the court. It is the debtor's obligation when seeking the court's confirmation to specify as accurately as possible the amounts which it intends to pay the creditors." *Id.* at 590 (footnote omitted).

**4.** On the second issue of "deferred cash payment," the *Pharmadyne* court merely stated,

"Second, § 1129(a)(9)(C) only bears upon claims which are to be paid in deferred cash payments. The plan filed by Pharmadyne does not provide for the deferment of payments to the IRS. As the IRS has failed to show that post-confirmation interest on Pharmadyne's debt falls within an exception to the general rule against post-petition interest on pre-petition debts, the Court finds for Pharmadyne on that issue." *Id.* at 522.

**5.** Based upon the extension of time to file its objection as well as the ultimate denial of its objections, the debtor cannot reasonably argue that payment, eleven months after the fact, is as soon thereafter as feasible.

M.D.N.C.1987) (finding that a deferred payment was a forced loan by the Government to the debtor). Here, balancing the language of the plan which dictates full payment against the almost eleven month delay in payment precipitated by the delayed and ultimately denied objection to the previous tax claim, the definition is clearly met under the facts of this case.

 This conclusion is supported by the Congressional intent in enacting Section 1129(a)(9)(C)—"to insure that creditors with priority tax claims who were required to accept payments over time would receive deferred payments equivalent to the present value of their claim." *In Re Southern States Motor Inns, Inc.*, 709 F.2d 647, 650 (11th Cir.1983). This is especially true, as here, where the plan itself called for full payment. Moreover, as the Eleventh Circuit has observed,

> ▮ If a debtor submits a generalized statement that it will pay secured creditors in full—100%, creditors are entitled to interpret that statement as guaranteeing the payment of each and every part of the creditor's claim. If the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions. Failing this, the debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan.

*In Re Fawcett*, 758 F.2d 588, 590–91 (11th Cir.1985). All in all, we agree with the Government that under the circumstances of this case, it is entitled to receive post-petition interest for the eleven month period so that it can receive its deferred payment in full.[6] We pass no judgment on whether the Government should always receive post-petition interest on a priority tax claim under Section 1129(a)(9)(C).

6. The debtor asserts that a single lump sum payment can never qualify as a deferred cash payment. We disagree because the plan itself, as in this case, can call for a contrary result. As the Government astutely observes, "[t]o take this argument to its logical extreme, a debtor con-

## CONCLUSION

The order of the bankruptcy court is reversed with instructions to have the debtor pay the applicable post-petition interest to the Government in accordance with this Opinion.

DONE and ORDERED.

ceivably could provide for a single balloon payment to a priority tax claimant six years after the effective date of the plan and not be required to pay interest on such a claim." Reply Brief, p. 6.