**In re: WHITE FARM EQUIPMENT, COMPANY, Debtor.**

**Bankruptcy No. 85 B 7532.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 1, 1992.

Joseph L. Matz of Holleb & Coff, Chicago, Ill., for John T. Grigsby.

David S. Newman, U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

The matter before the Court is the motion John T. Grigsby, designated person of the estate of the White Farm Equipment Company ("White Farm"), to satisfy claim number I–17 of the Internal Revenue Service ("IRS"). For the reasons set forth below, the Court, after considering the pleadings, memoranda, and exhibits grants White Farm's motion.

## FACTS AND BACKGROUND

The facts are undisputed. On May 20, 1985 an involuntary petition was filed against White Farm in the United States Bankruptcy Court for the District of Kansas. The case was transferred to the Northern District of Illinois on June 5, 1985 and converted to a voluntary Chapter 11 case on June 14, 1985.

On September 17, 1986 the IRS filed claim number I–17 in the amount of $660,-794.63 of which $379,106.63 represents principal indebtedness and $281,688.00 represents pre-petition interest. The Official Creditors' Committee disputed the IRS' contention that its claim was entitled to § 507(a)(7) priority. On July 11, 1989 this Court allowed the IRS' claim as a § 507(a)(7) priority claim. Upon the appeal of the Official Creditors' Committee, the District Court reversed this Court's decision holding that the IRS' claim was a general unsecured claim. The IRS then appealed to the Seventh Circuit which reversed the District Court holding that this Court had properly determined the IRS was entitled to a § 507(a)(7) priority. The Official Creditors' Committee petitioned the United States Supreme Court for a writ of certiorari which was denied on March 9, 1992.

After the Supreme Court denied the Official Creditors' Committee's petition for certiorari, White Farm contacted the IRS to determine the amount it owed and pay the IRS' claim. The IRS asserted it was entitled to post-confirmation interest on its claim from the date of confirmation until March 9, 1992 when the Supreme Court denied certiorari. White Farm opposed the payment of interest but proposed to pay the principal claim, pre-petition interest, and post-confirmation interest as long as a stipulation was entered stating that the IRS' entitlement to post-confirmation interest was disputed and would be resolved at a later date. In the alternative, White Farm proposed that it pay the principal claim and pre-petition interest to the IRS

designating that it only be applied to the principal claim and pre-petition interest. The IRS rejected both proposals.

The Plan confirmed in this case provided for liquidation of White Farm's assets. The IRS' claim is a Class 2 claim and according to section 4.2 of the Plan:

> Class 1, 2, 3, and 4 claims will be paid the allowed amount thereof in cash on the latter of the Effective Date or the date upon which such claims become Allowed Claims. Nothing herein shall preclude the immediate payment of any Class 1, 2, 3, and 4 claim.

The Plan defines an "Allowed Claim" as:

> Any claim against the Debtor provided: ... a claim as to which no objection to the allowance thereof has been interposed on or before the Confirmation date (as defined herein) or such other applicable period of limitation affixed by the Bankruptcy Code, Bankruptcy Rules or the Court, or as to which any objection has been determined by a final order to the extent such objection is determined in favor of a claimant unless otherwise permitted in the Bankruptcy Code or authorized under law, or specified herein or by order of the Court, "allowed claim" shall not include interest on such claim for the period from and after the petition date (as defined herein).

The IRS does not dispute that the claim was not allowed or payable until March 9, 1992 when the Supreme Court denied certiorari. The sole issue before this Court is whether the IRS is entitled to post-confirmation interest on its claim. The IRS' entitlement to post-confirmation interest in turn depends upon whether the fact that its claim was not payable until after March 9, 1992 makes it a deferred cash payment pursuant to § 1129(a)(9)(C) of the Bankruptcy Code.[1]

## DISCUSSION

White Farm contends that the plain language of the Plan dictates that the IRS is not entitled to post-confirmation interest on

its claim. White Farm relies on the Plan's definition of an "Allowed Claim" which provides "unless otherwise permitted in the Bankruptcy Code or authorized under law ... 'allowed claim' shall not include interest on such claim for the period from and after the petition date...." While it is clear from this language that allowed claims generally do not include post-confirmation interest, the qualifying language "unless otherwise permitted in the Bankruptcy Code or authorized under law," compels further inquiry by the Court into whether the provisions of the Bankruptcy Code or corresponding relevant case law provide for post-confirmation interest on claims of the type held by the IRS.

The IRS argues that it is entitled to post-confirmation interest pursuant to § 1129(a)(9)(C). The relevant portion of § 1129(a)(9)(C) provides that:

> (a) The court shall confirm a plan only if all of the following requirements are met:
>
> > (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
> >
> > > (C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

The IRS contends that as a result of the litigation and appeals regarding whether its claim was a § 507(a)(7) priority claim, any payment on that claim constitutes a deferred cash payment under § 1129(a)(9)(C) and thus is entitled to post-confirmation interest.

In support of its position, the IRS cites *In re Arrow Air, Inc.*, 101 B.R. 332 (S.D.Fla.1989). The plan of reorganization confirmed in *Arrow Air* provided for pay-

---

**1.** 11 U.S.C. §§ 101–1330 (1982 & Supp.1991). All section references are to the Bankruptcy Code unless otherwise noted.

ment "in full" of all allowed claims including the IRS' § 507(a)(7) claim. Payment was to be made on the effective date of the plan or as soon thereafter as practicable. *Arrow Air*, 101 B.R. at 333. Though the plan did not provide for deferred cash payments of the IRS' § 507(a)(7) claim, the District Court held that an eleven month delay caused by litigation of the IRS' claim warranted the award of post-confirmation interest.

In arriving at its decision, the court framed the issue as one of interpretation of the debtor's plan of reorganization. According to the court the issue was "... whether by promising to pay the priority claims of the Government 'in full' under the language of the plan, Appellee [debtor] guaranteed payment in the manner provided by Section 1129(a)(9)(C)." *Arrow Air*, 101 B.R. at 334–35. The court determined that the "in full" language was ambiguous and interpreted it against the debtor that drafted the plan holding that the language constituted a promise to pay interest on the claim for any delay in payment beyond the effective date of the plan.

The only other case that addresses the situation presented by *Arrow Air* and the case presently before this Court is *In re Pharmadyne Laboratories, Inc.*, 53 B.R. 517 (Bankr.N.J.1985) in which the Bankruptcy Court for the District of New Jersey denied post-confirmation interest to the IRS. At first blush, the bankruptcy court's holding in *Pharmadyne* appears to be completely contrary to the *Arrow Air* decision. However, upon examination, it becomes apparent that the cases are distinguishable on their facts. *Pharmadyne* involved a liquidating plan in which the IRS was to be paid its priority claims to the extent funds were available after higher priority claims were paid. The IRS sought post-confirmation interest pursuant to § 1129(a)(9)(C) but the court denied the request on the basis that 1) § 1129(a)(9)(C) governs the confirmation of a plan, not its administration, and 2) even if § 1129(a)(9)(C) is applicable, any delay in payment where the plan provided that the IRS was to be paid to the extent funds were available does not constitute a

deferred payment and thus the IRS is not entitled to interest.

Unlike *Arrow Air*, the plan's provisions in *Pharmadyne* were not ambiguous with regard to the IRS' claim. In addition, *Arrow Air* involved a plan of reorganization while *Pharmadyne* dealt with a plan of liquidation. The IRS acknowledged these distinctions in its briefs submitted in *Arrow Air* which stated that the *Pharmadyne* opinion:

> is inapposite for one simple reason—Pharmadyne concerned a liquidating Chapter 11 Plan wherein the debtor agreed to pay priority tax claims "to the extent there are funds available for payment" after the payment of superior claims. There was no promise of full payment of the priority tax and the United States did not object to the confirmation of the plan. Therefore, the court correctly ruled that the Government could not invoke the interest payment provision of Section 1129(A)(9)(C).

*Arrow Air*, 101 B.R. at 334. The IRS correctly recognized the crux of the issue in *Arrow Air* was the ambiguity of the plan's language. It is on the basis of the interpretation of that ambiguous language that the District Court decided that the IRS was entitled to post-confirmation interest in *Arrow Air*.

Like *Pharmadyne*, the plan in this case is a plan of liquidation. It is not disputed that the IRS' claim was neither an allowed claim nor payable until March 9, 1992 when the Supreme Court denied the Official Creditors' Committee's petition for a writ of certiorari. The Plan did not provide for deferred cash payments for the IRS. It provided for payment as soon as the IRS' claim became an allowed claim. The purpose of making deferred cash payments on a priority claim is to increase cash flow and thus increase the prospect of a successful reorganization. Here, no such purpose exists. White Farm's Plan is a liquidating plan that did not provide for payments over time to facilitate reorganization. The plan simply provided for payment of allowed claims at the time they became allowed. Therefore, any payments made to the IRS

are not deferred payments, § 1129(a)(9)(C) is inapplicable, and the IRS is not entitled to post-confirmation interest.

Furthermore, unlike *Arrow Air*, there is no ambiguity in White Farm's Plan. The Plan specifically provided for payment of allowed claims without any post-confirmation interest. The Plan does not provide for payment "in full" as was the case in *Arrow Air*, nor does it contain any similarly ambiguous language that could be interpreted to provide for post-confirmation interest on the IRS' claim. Therefore, the language of the Plan cannot be interpreted as guaranteeing payment as provided in § 1129(a)(9)(C).

## CONCLUSION

For the reasons set forth above, the motion of John T. Grigsby, designated person of the estate of the White Farm Equipment Company, is granted. The IRS shall not receive any post-confirmation interest on its claim.