**In re The MANSFIELD TIRE & RUBBER COMPANY, Pennsylvania Tire and Rubber Company of Mississippi, Inc., Pennsylvania Tire Company, Confirmed Debtors.**

**Bankruptcy No. 679–01238.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 26, 1993.

---

Michael S. Kranitz, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for trustee.

David S. Newman, Dept. of Justice, Washington, DC, for I.R.S.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

This case is before the court on remand for further proceedings from the United States District Court for the Northern District of Ohio. In October, 1986, the Disposition Assets Trustees (Trustees) objected to claims filed by the Internal Revenue Service (IRS) for certain excise taxes. This court agreed with the Trustees, held that the IRS' claims were penalties, subordinated its claims and the District Court affirmed. *In re Mansfield Tire & Rubber Company,* 80 B.R. 395 (Bankr.N.D.Ohio 1987), *aff'd,* 120 B.R. 862 (N.D.Ohio 1990). The Court of Appeals reversed and held that the excise taxes assessed against the debtors were not penalties and were entitled to priority under 11 U.S.C. § 507(a)(7)(E). *In re Mansfield Tire & Rubber Co.,* 942 F.2d 1055, 1059 (6th Cir. 1991), *cert. denied, Krugliak v. United States,* — U.S. —, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992).

The IRS now asserts that because it holds allowed claims it is entitled to interest on the unpaid balances from the consummation date of the plan, January 29, 1986, until the date of payment.

The Trustees and the IRS submitted stipulated findings of fact, briefed the issues, and, following oral argument, the court took the matter under advisement.

### FACTS

The court substantially adopts the facts as agreed upon by the parties.

1. On October 1, 1979, Mansfield Tire & Rubber Company (Mansfield) and a related company, The Pennsylvania Tire and Rubber Company of Mississippi, Inc. (Penn-Miss) filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code.

2. On November 1, 1979, another related company, Pennsylvania Tire Company, an Ohio corporation, (PennOhio), filed for protection under the bankruptcy laws.

3. On February 6, 1980, the IRS filed a proof of claim for withholding and Federal Insurance Contributions Act taxes (FICA taxes) in the amount of $6,304.63 for the third quarter of 1979 for Mansfield.

4. On February 6, 1980, the IRS filed a proof of claim for withholding and FICA taxes in the amount of $14,042.50 for the third quarter of 1979 and for excise taxes for the third quarter of 1979 in the amount of $256,244.00 for PennMiss.

5. On May 19, 1980, the IRS filed a supplemental claim for Form 5330 excise taxes (Pension Excise Taxes) in the amount of $315,208 for 1977 and 1978 and for unemployment taxes for 1979 in the amount of $1,560.38 for Mansfield.

6. On May 19, 1980, the IRS filed an administrative claim, which it designated as Supplemental # 2 to its proof of claim filed on February 6, 1980 for Mansfield. The claim was for withholding and FICA taxes for the fourth quarter of 1979 for Mansfield in the amount of $2,453.73.

7. On November 26, 1980, the IRS filed supplement three to its February 6, 1980 proof of claim for Mansfield for $19,125.82 in excise taxes for all four quarters of 1977 and the first three quarters of 1978 and for $16,061.20 in Pension Excise Taxes for 1978 for Mansfield.

8. On June 4, 1981, the IRS filed supplemental claim four for $31,842.00 for Pension Excise Taxes for 1979 for Mansfield.

9. On March 29, 1984, the IRS filed a proof of claim to amend and supersede its claim filed on February 6, 1980 for Penn-Miss. This proof of claim alleged third quarter excise taxes in the amount of $201,021.31.

10. On March 29, 1984, the IRS filed a proof of claim for unpaid withholding and FICA taxes for the fourth quarter of 1979 for PennOhio in the amount of $242.86.

11. On December 23, 1985, the United States filed an objection to the Debtors' Second Modified Consolidated Plan of Reorganization. The objection alleged, *inter alia*, that the plan

> is ambiguous to the extent that Article III (Treatment of Claims and Interest), ¶ 3.1, provides for alternative dates of payment of allowed claims. The Internal Revenue Service is entitled to payment in full on the effective date of the Plan; or, alternatively, to interest on its claim if not paid in full on the effective date. 11 U.S.C. § 1129(a)(9)(A), (C).

12. By letter dated December 26, 1985, the United States Attorney's office notified Mr. Schwartzberg, then counsel for the Trustee, that:

> assuming the correctness, validity, and amounts of the Internal Revenue Service's (IRS's) priority and administrative claims, all of these claims, including prepetition interest, will be paid in cash on the date of confirmation of the second modified consolidated plan of reorganization. With this understanding, the IRS withdraws its objection to the second modified plan.

13. As of the date of the December 26, 1985 letter referred to in paragraph 12, *supra*, no period of limitations had been set by the Court for filing objections to the allowance of any or all Claims, priority, general unsecured or otherwise, and no objection had been filed with respect to any claims of the IRS.

14. On December 30, 1985, the Second Modified Consolidated Plan was confirmed by the Court. Plan provisions provide that:

*ARTICLE I*

*DEFINITIONS*

\* \* \* \* \* \*

(a) *"Allowed Claim"* shall mean any claim against the Debtors, proof of which was filed on or before March 30, 1984, or

which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, the Rules of Bankruptcy Procedure or an order of the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court allowing such claim that is no longer subject to appeal or certiorari proceeding, and as to which no appeal or certiorari is pending.

\* \* \* \* \* \*

(i) *"Consummation Date"* shall mean the first business day after the thirtieth day following the Confirmation Date or such later business day as soon as practicable thereafter ...

\* \* \* \* \* \*

(m) *"Distribution Date"* shall mean any date, subsequent to the Consummation Date, on which additional distributions of Available Cash are made to holders of Allowed Claims in Classes 2 and 3.

\* \* \* \* \* \*

1.2 Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan, shall, when used in the Plan, have the meanings attributed to them in the Bankruptcy Code.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTERESTS

For the purposes of the Plan, Claims and Interests are designated as follows:

2.1 Class 1 shall consist of administrative expenses and Claims entitled to priority in distribution as granted by §§ 503(b) and 507 of the Bankruptcy Code.

## ARTICLE III

### TREATMENT OF CLAIMS AND INTERESTS

3.1 Class 1 Claims are not impaired; and the Disposition Assets Trustees shall pay to the holders of Class 1 Allowed Claims, without interest, one hundred percent (100%) of the amount of such Allowed Claims on the Consummation Date, in the ordinary course of business, or on such other terms as may be agreed upon between any of the Debtors or the Disposition Assets Trustees and the respective holders of such Allowed Claims.

\* \* \* \* \* \*

## ARTICLE IX

### RESERVE FUND, SUBSEQUENT PLAN DISTRIBUTIONS

\* \* \* \* \* \*

9.2 Subsequent to the Consummation Date, once a claim in Classes 1, 2, or 3 becomes an Allowed Claim, the Disposition Assets Trustees shall as soon as practicable thereafter pay to the holder of such Allowed Claim in Cash, without interest, from the Reserve Fund an amount equal to the aggregate of the Cash distributions which would have been previously distributed to such holder by the Disposition Assets Trustees, as if such Allowed Claim had been an Allowed Claim eligible for distribution on the Consummation Date.

\* \* \* \* \* \*

Additionally, the provisions of the Order Confirming Plan provide that:

\* \* \* \* \* \*

2. The provisions of chapter 11 of the Code have been complied with; and

\* \* \* \* \* \*

4. Each holder of a claim has accepted the Plan and will receive or retain under the Plan property of equal value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Code on such date;

\* \* \* \* \* \*

11. Upon motion of attorney for the Trustee to incorporate the evidence and testimony taken at the hearing on approval of the Disclosure Statement on November 29, 1985, into the record of

this hearing, the Court hereby orders that the entire transcript of that proceeding be incorporated into this proceeding for the purpose of consideration hereof.

15. Richard Phillips and Samuel Krugliak were named trustees of the trust in which the assets of the debtors vested.

16. By letter, dated April 14, 1992, to Kenneth W. Rosenberg of the United States Department of Justice, counsel for the Trustees proffered, on their behalf, to pay to the IRS the sum of $363,111.20 in satisfaction of the Pension Excise Claim. The letter also references a telephone call to Mr. Rosenberg in February 1992 during which counsel for the Trustees previously had proffered to pay the Pension Excise Claim. Subsequent to his receipt of the Trustees' April 14, 1992 letter, Mr. Rosenberg referred the Trustees to Karen Smith of the Justice Department, indicating that Ms. Smith would contact the Trustees to arrange payment of the Pension Excise Claim.

17. By letter dated May 7, 1992, (the May 1992 Letter), counsel for the United States advised the Trustees that IRS records indicated a total tax liability (including the Pension Excise Claim) in the principal amount of more than $590,000.00 plus an administrative claim in the principal amount of $2,453.73. The May 1992 Letter stated that IRS records indicated that certain of these liabilities may have been paid and requested documentation of any such payment. The letter further asserted that the IRS is entitled to interest on its tax claims from the Confirmation Date of the Plan.

18. On June 5, 1992, a telephone conference among Judge Williams, Ms. Smith for the United States and counsel for the Trustees was held to discuss these issues. During the telephone conference, counsel for the Trustees proffered to pay to the United States the sum of $363,111.20 in satisfaction of the prepetition amount of the Pension Excise Claim. Following the telephone conference, by telefax the Trustees (i) advised the United States that the funds to pay such amount would not be liquid until June 22, 1992 and (ii) transmitted to the United States copies of the Plan and the order confirming the Plan. On June 8, 1992, the Trustees transmitted to the United States documentation of payment of some of the asserted tax claims and requested an accounting of what claims the IRS deems still outstanding.

19. The documentation of payments provided by the Trustees showed the following payments:

a. $6,304.63 on claim 38077 for withholding and FICA for the 3rd quarter of 1979 (which amount equalled the pre-petition amount of the February 6, 1980 claim filed for Mansfield);

b. $20,335.14 on claim 380135 for pension excise and FUTA taxes for Mansfield (which amount is $14,851.88 less than the pre-petition amount of supplement 3 to the February 6, 1980 claim).

c. $192,282.31 on claim 390208 for third quarter excise taxes for PennMiss (which amount is $7,739.00 less than the pre-petition amount due on the amended superseded claim filed on March 29, 1984; and

d. $242.86 on claim 330108 for PennOhio (which amount equals the pre-petition balance of the claim filed for PennOhio).

20. On June 23, 1992, the United States received from the Trustees check no. 61–06406855, dated June 22, 1992, in the amount of $363,111.20, the receipt of which constituted payment in full of the face amount of the proofs of claim related to the Pension Excise Claim.

21. The United States agrees that these payments were made and applied to the applicable proofs of claim balances.

22. By letter dated June 30, 1992, the United States advised the Trustees that it asserted an entitlement to interest on the Pension Excise Claim from the Consummation Date (as defined in the Plan) of the Plan up to June 23, 1992 in the amount of $334,104.32. With respect to certain taxes in the aggregate principal amount of $220,164.94 (the 1986 Taxes), which amount had been paid and posted on October 26, 1986, the United States asserts entitlement to interest from January 30, 1986 until October 22, 1986 in the amount of $19,420.72.

The United States also asserts entitlement to additional interest upon the interest it asserts is owing on the Pension Excise Claim in the amount of $2,859.96 and on the 1986 Taxes in the amount of $15,664.48, both as of August 1, 1992. It also asserts an entitlement to additional interest on any unpaid amounts from August 1 until the date of posting of said payments.

23. In its June 30, 1992 letter, the United States also alleged that certain priority unsecured tax claims in the aggregate principal amount of $7,739.00 and an administrative claim in the principal amount of $2,453.73 (collectively, the . Additional Claims) remain due and owing and asserts entitlement to interest on the Additional Claims from the Consummation Date of the Plan.

24. By letter dated July 22, 1992, counsel for the United States informed counsel for the Trustees that, applying all payments made to the unpaid pre-petition amounts of the proofs of claim (and not to post-consummation interest), unpaid pre-petition balances remained as follows:

a. Claim # 380135 had an unpaid prepetition balance of $351.06.

b. Claim # 390208 had an unpaid prepetition balance of $7,739.00

c. The administrative claim of the IRS had an unpaid principal balance of $2,453.73.

The letter further stated that the IRS had no knowledge of or correspondence about any reason why the full amounts of these claims had not been remitted.[1]

### DISCUSSION

Inasmuch as this matter has been taken under advisement upon remand from the District Court, "the trial court must ... proceed in accordance with the mandate and law of the case as established by the appellate court." *Petition of United States Steel Corp.*, 479 F.2d 489, 493 (6th Cir.1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). Therefore, the IRS' claims will be accorded Section 507(a)(7)(E) priority status without further discussion.

The IRS argues that it is entitled to interest on its claims because they were allowed claims on the confirmation date. The plan provided for payment of the IRS claims and no objection was pending on the confirmation date. Therefore, the argument runs, Section 1129(a)(9)(C) mandates that allowed priority claims, such as those asserted by the IRS, be paid, either at confirmation, as a deferred payment with interest as of the plan's effective date, or upon other agreed terms.

The IRS' second basis for its interest claim is that the plan, at the very least, provides for postconsummation interest on its claims. This argument is also based upon the IRS' contention that its claims were allowed on the confirmation date. Section 3.2 of the plan provides for one-hundred percent payment, without interest, on allowed claims as of the confirmation date. The IRS urges that it was entitled to payment on the January 29, 1986, consummation date because no objection had been filed prior to the confirmation date of December 30, 1985. IRS' claim of entitlement to one-hundred percent payment on the January 29, 1986, consummation date is based on the fact that any late payments must include interest up to the time of actual payment.

Lastly, the IRS asserts that it is entitled to interest on the interest it is owed, up to the time of payment.

The Trustees argue that Section 1129(a)(9)(C) has no postconfirmation applicability as Section 1129 only addresses the contents of a plan, not parties' compliance therewith. Further, say the Trustees, had the IRS wanted to preserve its right to interest, it should have objected to the

---

1. It appears that there have been some errors made in the crediting of payments.

The stipulations assert that there was a shortage of $14,851.88 arising from the Trustees' $20,335.14 payment of October 26, 1986. The only way this result is obtained is if the payment is applied to the $19,125.82 excise tax claim and the $16,061.20 Pension Excise Tax claim. The $363,111.20 payment of June. 23, 1992 appears to result in a double payment of the $16,061.20 Pension Excise Tax claim.

plan's confirmation and res judicata now bars the IRS from arguing that the plan fails to comply with Section 1129. Secondly, the Trustees contend that the IRS is entitled to no interest because it is bound by the terms of the plan. Despite the fact that the Trustees' objection was not filed until October, 1986, the filing of the objection precluded the IRS' claims from attaining allowed status under Article I of the plan. Section 9.2 of the plan provides for payment of disputed claims, whenever paid, without interest and at the amount the claim holder would have received on the consummation date, had the claim been allowed.

The IRS' claim to "interest on interest" is dismissed by the Trustees as absurd. They argue that because the IRS is not entitled to interest on its claims, it is similarly not entitled to interest on the interest owed.

Lastly, the Trustees contend that the IRS is not equitably entitled to interest on its claims. Had it lost, it would not be seeking interest on a subordinated claim and is not entitled to prejudgment interest on its claims.

In essence, the Trustees argue that because they objected within the time allowed, the IRS' claims did not obtain allowed claims status under the plan. As a result, they say, section 9.2 controls and no interest is payable.

The plan provides for payment of allowed claims as defined in Article I. "Allowed Claims" are defined as only those claims which have not been objected to within the period permitted by the Code or the court, or those which have been objected to and are no longer subject to appeal or certiorari. Article III compels the Trustees to pay Allowed Claims, without interest, at one-hundred percent. Three payment terms are provided in Article III: 1) On the consummation date; 2) in the ordinary course of business; or 3) other agreed upon terms. Article IX further provides for payment of claims which become Allowed Claims after the consummation date. Such claims are to be paid as soon as practicable,

as if they were Allowed Claims on the consummation date, without interest.

The Trustees point out that the plan was confirmed as written and that the IRS had an opportunity to object to the provisions of the plan at the confirmation hearing. It is argued by the Trustees that res judicata now bars the IRS from altering the plan's terms. The Trustees' position is correct insofar as the res judicata effect of confirmed plans. *In re GEX Kentucky, Inc.,* 100 B.R. 887 (Bankr.N.D.Ohio 1988); *In re Sanders,* 81 B.R. 496 (Bankr.W.D.Ark. 1967); 5 *Collier on Bankruptcy,* ¶ 1141.01 at 1141-4 to 1141-8 (15th ed. 1992). This does not necessarily lead, however, to the conclusion that the IRS is not entitled to interest on its claims.

■ A plan of reorganization creates legally enforceable rights upon its confirmation. *Evans v. Dearborn Machinery Movers Co.,* 200 F.2d 125 (6th Cir.1953); 5 *Collier, supra,* ¶ 1141.01[1] at 1141-5. Additionally, "[i]t is the debtor's obligation when seeking the court's confirmation to *specify as accurately as possible* the amounts which it intends to pay the creditors." *Terex Corp. v. Metropolitan Life Insurance Co.,* 984 F.2d 170, 175 (6th Cir. 1993) (emphasis added). As outlined above, the plan provides for three means of payment on claims "to which no objection *has been interposed* within the applicable period of limitation fixed by the Bankruptcy Code, the Rules of Bankruptcy Procedure or an order of the Bankruptcy Court ..." (emphasis added). It may be reasonable to read that passage, as the Trustees do, to mean that any timely objection, whenever filed, acts to preclude the claim from acquiring allowed status under the plan. The court believes it is more reasonable to read the provisions of the plan in light of its effective date. The temporal element of the passage under consideration refers to claims "to which no objection has been interposed." Had the Trustees intended to create the preclusive effect they are now seeking, language could have been included in the plan to so provide. An allowed claim might have been defined as one "to which no objection has been [, or may be,] inter-

posed within the applicable period...." Reading Article I of the plan as of the time of confirmation, does not, as written create the preclusive effect sought by the Trustees. At that juncture, no objection to the IRS' claims *had been interposed*, and as such, the IRS claims met the definition in Article I of the plan. Thus, the IRS was entitled to payment of its claims on the consummation date as provided in the plan.

The IRS looks to *In re Arrow Air, Inc.*, 101 B.R. 332 (S.D.Fla.1989) for support of its proposition and the Trustees rely on *In re White Farm Equipment Co.*, 146 B.R. 736 (Bankr.N.D.Ill.1992). The court does not consider *White Farm Equipment* persuasive because the IRS' claim in that case was in dispute at confirmation. *Id.* at 737. (The IRS did not dispute that its claim was not allowed or payable until the Supreme Court denied certiorari.) In *Arrow Air*[2] the plan merely provided for payment in full rather than payment of one-hundred percent of the claim without interest on the consummation date, as does the subject plan. In *Arrow Air*, the court agreed with the IRS and found that "by promising to pay the priority claims of the government 'in full' under the language of the plan, Appellee guaranteed payment in the manner provided by Section 1129(a)(9)(C)." *Arrow Air*, 101 B.R. at 334–35. The *Arrow Air* court advises that "[i]f the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions." *Id.* at 336 (quoting *In re Fawcett*, 758 F.2d 588 (11th Cir.1985)). As stated above, despite the inclusion of the "without interest" language, because no objection had been filed prior to confirmation, the Trustees' plan failed to prevent the IRS from becoming entitled to payment of its claims on the consummation date.

■ The IRS also argues that 11 U.S.C. § 1129 affects the disposition of this matter. Section 1129(a)(9)(C) provides:

with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

While Section 1129 does not have express postconfirmation effect, the plan as confirmed must conform to its requirements. The Trustees and the IRS arrived at agreed payment terms, and as such, the plan complied with Section 1129(a)(9). The Trustees must either pay the IRS' claims, if allowed, at the consummation date, or if an objection had been filed, and upon postconfirmation allowance, at one-hundred per cent as if paid on the consummation date, without interest. Based upon that agreement, the IRS did not object to the plan's confirmation. The court could not have confirmed a plan which did not provide for payment of a claim in compliance with Section 1129, and similarly, it should not act now to validate the Trustees' actions which in effect create a plan in violation of Section 1129. See *Terex Corp.*, 984 F.2d at 174 ("an award of interest was the only means by which Metropolitan's claim could be paid in a manner consistent with § 1129(a)"). Therefore, because the Trustees did not pay the IRS' claims on the consummation date as agreed, the court must treat the IRS' claims as deferred payments thereby entitling the IRS to the value of its claims as of the effective date of the plan.

■ The only issue remaining is the amount of interest owed based upon the rate and relevant periods. The appropriate rate to be used in calculating interest has been found by other courts to be the market rate at the effective date of the plan, rather than the rate set by 26 U.S.C. § 6621. *In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503, 1505–08 (9th Cir.1987); *United States v. Neal Pharmacal Company*, 789 F.2d

---

**2.** The Sixth Circuit Court of Appeals cited approvingly to *Arrow Air* in *Terex Corp.*, 984 F.2d

at 175.

1283, 1285–89 (8th Cir.1986); *In re Burgess Wholesale Mfg. Opticians, Inc.*, 721 F.2d 1146, 1147 (7th Cir.1983); *Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647, 650–51 (11th Cir.1983); 1A *Collier, supra*, ¶ 11.05[3] at 11–48 to 11–49; 5 *Collier, supra*, 1129.02[9][a].

The cases cited above recognize that the rate found in I.R.C. § 6621 may be considered as a factor, but it is not exclusive and has not been given extraordinary weight in the courts' analyses. Additional factors which have been considered are: 1) The rate the government pays to borrow; 2) the risk of nonpayment to the IRS; 3) the term of the "loan"; and 4) the value of any security taken. See *Camino Landscape*, 818 F.2d at 1505–08; *Neal Pharmacal*, 789 F.2d at 1285–89; 5 *Collier, supra*, ¶ 1129.02[9][a] at 1129–50.

There are portions of the interest rate analysis which the court can address at this time. First, the IRS' claims are unsecured and hence, the value of any security is not an issue. Second is the period for which any interest may be owed. There are three periods to be considered: 1) January 29, 1986, to October 26, 1986, on the $220,164.94 payment; 2) January 29, 1986, to June 23, 1992, on the $363,111.20 payment; 3) January 29, 1986, until the payment date on any unpaid balance. Using those periods, the IRS' entitlement to interest may be found by calculating the value of the IRS' claims as of the payment dates noted above. The court declines to address other issues which may impact the interest rate calculation, such as the risk factor and the government's borrowing rate because neither party has provided argument in their briefs and the court is otherwise without guidance on these issues.

Finally, the IRS' request for interest on interest will be denied for the reason that the court is not in fact awarding interest on the IRS' claims. The court must only ensure that the claim is paid according to Section 1129(a)(9)(C) which requires that claimants receive "value, as of the effective date of the plan, equal to the allowed amount of such claim." The interest rate merely happens to be the means by which the court finds the present value of the allowed amount of a claim. Therefore, because interest on interest goes beyond the present value of the IRS' claims, that much of the IRS' position must be rejected.

## CONCLUSION

In conformance with the foregoing discussion, the court finds the IRS' claim for interest on its claims to be well taken and it will be granted. The court will withhold judgment on the actual rate and amount owed until such time as the parties may agree on the issue or submit briefs so that the court may make an informed decision. Finally, the court finds the IRS' claim to interest on interest not to be well taken and it will be denied.