**In re Ralph J. COLLINS, Debtor.**

**Bankruptcy No. 85–07179.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

April 12, 1995.

A. Eugene Lewis, Tallahassee, FL, William Vandercreek, Dallas, TX, for debtor.

Marika Lancaster, Tax Div., Dept. of Justice, Washington, DC, P. Michael Patterson, U.S. Atty., Tallahassee, FL, for IRS.

Charles Glidewell, U.S. Trustee, Tallahassee, FL.

### MEMORANDUM OPINION ON DEBTOR'S MOTION FOR CLARIFICATION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER was heard on the Debtor's motion for Clarification and Determination of Amount and Manner of Payment of Claim with respect to the claim of the Internal Revenue Service (IRS). The Debtor seeks to clarify whether or not he is required to pay post-confirmation interest on the IRS' claim, the rate of interest if required, and the time in which he has to pay the claim. For the reasons set forth herein, I find that the IRS is entitled to interest on its claim, that the interest rate shall be 8% compounded annually, and that the claim is payable immediately.

### PROCEDURAL BACKGROUND

In December of 1985, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. The IRS filed a claim for pre-petition tax liability with priority pursuant to 11

U.S.C. § 507(a)(7) [now § 507(a)(8) ] in the amount of $94,185.54. The Debtor objected to the claim, and a hearing was held on October 7, 1987. Meanwhile, the disclosure statement was approved and the plan was confirmed. Because the tax issue was left unresolved at confirmation, the Debtor provided a letter of credit for the benefit of the IRS in the amount of its original claim, in case the claim was allowed. After the October 7th hearing, I entered an order on February 3, 1988, disallowing the claim. The IRS appealed, and the District Court affirmed this Court's ruling in an order entered on June 12, 1992. The IRS appealed again, and the Eleventh Circuit Court of Appeals reversed the District Court on July 20, 1994.[1] Now, the IRS seeks interest on its claim, running from the time of confirmation of the plan. The Debtor then brought a motion for clarification of the issue. Two narrow legal issues are presented:

1) If a Section 507(a)(8) priority claim by the IRS is initially disallowed, and then allowed on appeal, is the IRS entitled to post-confirmation interest when the debtor's plan promises payment "in full in cash?"

2) If the IRS is entitled to interest, from what date, and at what rate of interest?

### POSITION OF THE PARTIES

It is the Debtor's position that the IRS is not entitled to post-confirmation interest until the effective date of the Plan. In defining this term, the Debtor has attempted to modify the claimant's right to interest under Section 1129(a)(9)(C) of the Code.[2] Specifically, the Plan defines the effective date as the latter of "the first Business Day following the date on which the Confirmation Order becomes final" or "the date concerning the resolution of priority claims." The Debtor argues, with respect to the IRS claim, that this date would be November 10, 1994, when

judgment was entered by the District Court pursuant to the remand from the Eleventh Circuit. Thus, the IRS is only entitled to interest for any delay in payment subsequent to that date. In the alternative, the Debtor asserts that the Plan is a liquidating plan, providing for payment of $94,185.54, as evidenced by the letter of credit. Furthermore, the Plan was confirmed on this basis. Therefore, no interest is required for the delay caused by litigation over the validity of the claim. In addition, the Debtor argues that the IRS has not properly assessed interest as required by 26 U.S.C. § 6621. Finally, if interest is determined to be payable, the Debtor's position is that the risk of nonpayment was negligible because the claim was collateralized by an irrevocable letter of credit. Thus interest, if allowed, should be the cost of funds to the IRS as shown by 28 U.S.C. § 1961. This rate would be computed daily by the fifty-two week United States Treasury Bill auction price and compounded annually.

The IRS frames the issue as whether notice of nonpayment of post-confirmation interest on its tax claim was effectively provided by the Debtor's Plan. The IRS' position is that the Debtor's Plan provides for payment of its claim "in full in cash" on the effective date of the Plan or upon allowance of the claim by the Bankruptcy Court. Since the claim wasn't allowed by the Bankruptcy Court, the former provision would apply. In examining the Plan's definition of effective date, there appears to be a typographical error.[3] Thus, the only clear notice of the effective date is "the first Business Day following the date on which the Confirmation Order becomes final and non-appealable." Furthermore, the IRS argues that this notice does not speak to the payment of interest, but only to the timing of payment of the claim. Thus, the IRS asserts that the delay caused by the litigation has no effect on the obligation of the Debtor to compensate it for

1. *United States v. Collins* (*In re Collins* ), 26 F.3d 116 (11th Cir.1994).

2. See footnote 4, infra, for the relevant provisions of 11 U.S.C. § 1129.

3. Article 1.01(m) of the Debtor's Plan provides: "Effective Date of This Plan shall mean the first

Business Day following the date on which the Confirmation Order becomes final and non-appealable or **omit** the date concerning the resolution of Class I priority claims or objections by general unsecured creditors to the amount of allowed claims, whichever is later, provided that no stay of the Confirmation Order is then in effect." (Emphasis supplied.)

the delay in payment of its claim. Therefore, it is entitled to the present value of the claim as of the effective date of the Plan. The IRS' position is that the claim is payable immediately. Not only did the Plan provide for lump-sum payment "in full in cash," but more importantly, § 1129(A)(9)(c) requires the claim to be paid within six years from the date of assessment. With respect to the rate of interest, the IRS advocates 9% compounded daily as based on 26 U.S.C. § 6621.

## INTEREST SHOULD BE ALLOWED

The treatment of priority tax claims is governed by 11 U.S.C. § 1129(a)(9)(C).[4] The Debtor argues that Section 1129 only applies to the confirmation of a plan and not to its administration. However, I find the arguments of the IRS more persuasive. The IRS cites two cases in support of its position, *United States v. Arrow Air, Inc. (In re Arrow Air)*, 101 B.R. 332 (S.D.Fla.1989), and *In re Mason and Dixon Lines, Inc.*, 71 B.R. 300 (Bankr.M.D.N.C.1987). While I agree that both cases stand for the proposition that interpretation of the language of the plan is controlling, I find *Arrow Air* to be more analogous to this case.

In *Arrow Air*, the court found that a single, lump-sum payment to a priority tax claimant nearly 11 months after confirmation of the debtor's Chapter 11 plan qualified as a "deferred cash payment" as the debtor's plan provided for payment "in full" on the "Effective Date of the Plan or as soon thereafter as is feasible." *Arrow Air*, 101 B.R. at 335. The court arrived at its decision by interpreting the debtor's plan of reorganization. The issue was "whether by promising to pay the

priority claim 'in full' under the language of the plan, Appellee [debtor] guaranteed payment in the manner provided by Section 1129(a)(9)(C)." *Arrow Air*, 101 B.R. at 334–335; *see also United States v. White Farm Equipment Co. (In re White Farm)*, 157 B.R. 117, 120 (N.D.Ill.1993) (distinguishing that plan based on the express language denying post-confirmation interest and the lack of any ambiguous terms). The court found the "in full" language was ambiguous and interpreted it against the debtor who had drafted the plan. *Arrow Air*, 101 B.R. at 335. The court held that the language constituted a promise to pay interest on the claim for any delay in payment beyond the effective date of the plan. *Id.* at 335–36.

The similarity of Article 4.01 of the Debtor's Plan to the *Arrow Air* plan is apparent. This Article provides:

The allowed priority claims of Class I creditors shall be **paid in full in cash** on the Effective Date of this Plan [5] or upon the allowance of such claims by the final Order of the Bankruptcy Court, whichever may be applicable, or upon such other terms as may be agreed upon by the holders of such claims and the Debtor. (Emphasis supplied.)

I agree with the IRS that the method used by the Debtor to resolve the issue is too ambiguous. The Plan does not expressly provide for, or preclude, the payment of post-confirmation interest to the IRS. The ambiguity in the Debtor's Plan created by the omission of express language concerning post-confirmation interest and the typographical error with respect to this claim

---

4. The Statute in relevant part provides:

   (a) The court shall confirm a plan only if all of the following requirements are met:
   (9) ... Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
   (C) ... with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

5. The definition of "Effective Date of this Plan" contained in Article 1.01(m), see footnote 3, apparently contains a typographical error in the inclusion of the word "omit." Reading through this error, the debtor insists that the plan calls for "payment in full in cash" upon either the "Effective Date" of the plan or the "allowance" of the claim by final Order of the Bankruptcy Court. The latter provision is inapplicable, because this Court initially disallowed the claim. The remaining phrase would point to the "Effective Date" as "the date concerning the resolution of Class I priority claims." In the case of the IRS, the Debtor asserts the effective date is the day the claim was allowed by the Eleventh Circuit.

must be construed against the Debtor. *Arrow Air*, 101 B.R. at 334–35 (citing *Fawcett v. United States (In re Fawcett )*, 758 F.2d 588, 590–91 (11th Cir.1985)). Therefore, I find it reasonable that a creditor may assume the Plan's language only refers to the timing of when the claim is to be paid.

The Debtor, relying on *White Farm*, argues that Section 1129 applies only to the determination of whether a plan is confirmable, and not to its administration. The *White Farm* plan provided for liquidation of assets in a manner to provide that "claims will be paid the allowed amount thereof in cash on the latter of the Effective Date or the date upon which such claims become Allowed Claims." *Id.* at 119. The plan expressly stated that an "Allowed Claim" did not include interest for the period from and after the petition date. *Id.* Thus, the plain language of the plan did not provide for payments over an extended time. Accordingly, the court determined that the payments to the IRS were not deferred payments. Unlike the instant case, the plan in *White Farm* was clear regarding when disputed claims would be paid and whether these claims, when allowed, would include interest. *Id.* at 122. The bankruptcy court reasoned:

> [u]nlike *Arrow Air*, there is no ambiguity in White Farm's Plan. The plan specifically provided for payment of allowed claims **without any post-confirmation interest.** The plan does not provide for payment in full as was the case in *Arrow Air*, nor does it contain any similarly ambiguous language that could be interpreted to provide for post-confirmation interest on the IRS' claim. Therefore, the language of the plan cannot be interpreted as guaranteeing payment as provided in § 1129(a)(9)(C).

*In re White Farm Equipment Co.*, 146 B.R. 736, 739 (Bankr.N.D.Ill.1992) affirmed, 157 B.R. 117 (N.D.Ill.1993). (Emphasis supplied.)

▪ In the present case, the Debtor's Plan is simply too ambiguous to deny the IRS the rights granted to it by Section 1129(a)(9)(C). The *White Farm* plan is distinguishable based on the specific language of the plan denying post-confirmation interest. The court there also based its decision on the rationale that "the purpose of making deferred payments on a priority claim is to increase cash flow and thus increase the prospects of a successful reorganization." 157 B.R. at 121. While this may be true, I respectfully disagree with the underlying premise that creates a distinction between liquidating and rehabilitative payments with respect to post-confirmation interest. While the purpose of allowing deferral of payments, instead of cash on confirmation, may be to facilitate reorganization, the present value requirement of Section 1129 ensures that priority claimants will be compensated for the "time value of money" if their payment is delayed. *See United States v. Southern States Motor Inns, Inc. (In re Southern States )*, 709 F.2d 647 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984) (holding the primary intent of Section 1129(a)(9)(C) is to provide future payments of an amount equal in value to an amount paid in full upon the effective date of the plan).

More importantly, this Court is bound by the holding in *Fawcett*. Although that case involved a secured claim by the IRS, the holding is applicable to the present case. The *Fawcett* plan called for payment to creditors "in full—100%." 758 F.2d at 590. The IRS filed an objection to the debtor's Notice of Intention to Sell Property of the Estate based on the fact that it was to receive only the value of its claim from the sale and did not include post-petition interest up to the date of sale. *Id.* at 589. On appeal, the debtor's position was that the IRS was required to file a more specific proof of claim that demanded not only principal and pre-petition interest, but post-petition interest as well. *Id.* The debtor also asserted that the failure to object to the confirmation of the plan prevented the IRS from now claiming post-petition interest. *Id.*

Under a notice rationale, *Fawcett* held that the IRS was entitled to post-petition interest. *Id.* at 590. The court reasoned that the language on the proof of claim form put the debtor on notice of the IRS' intention to claim post-petition interest. *Id.* While agreeing that the IRS' notice should have been clearer, most important was the lack of any assertion to the contrary by the debtor.

*Id.* at 590–91. Under those facts, the court held that a creditor is entitled to rely on general statements contained in a debtor's plan, such as "payment in full," to include payment of all portions of their claim. *Id.* at 591. The Eleventh Circuit observed:

> If a debtor submits a generalized statement that it will pay secured creditors in full—100%, creditors are entitled to interpret that statement as guaranteeing the payment of each and every part of the creditor's claim. If the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions. Failing this, the debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan. This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them.

*Fawcett*, 758 F.2d at 591.

■ In this case, the amended proof of claim filed by the IRS on May 11, 1987, expressly stated, "To the extent that **post petition** penalties and **interest** are nondischargeable and remain unpaid, they may be collected from the debtor." (Emphasis supplied.) Given this notice, and the Debtor's statement that Class I priority claims shall be paid "in full in cash," I hold that the IRS is entitled to receive post-petition interest on its claim. Based on the fact that the IRS' claim was assessed over six years ago, the Debtor is not entitled to any further deferral of payment. 11 U.S.C. § 1129(a)(9)(C).

### INTEREST RATE

■ With respect to the appropriate rate of interest, the facts of this case are unique. The Debtor was directed, in the final decree of November 16, 1989, to obtain a letter of credit for the principal amount of the debt in anticipation that the IRS might successfully defend the objection to claim. The seven year delay was not anticipated, and the letter of credit expired of its own terms three years later. The Debtor asserts that the applicable rate of interest should be based on 28 U.S.C.

§ 1961 and compounded annually, while the IRS advocates a rate based on 26 U.S.C. § 6621 compounded daily. Upon closer examination of the Debtor's Plan and applicable law, I hold that a rate of interest of 8% compounded yearly is reasonable in this case.

■ Section 1129(a)(9)(C) provides that the IRS must receive on its priority tax claim "deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, equal to the allowed amount of such claim." Similar language appears throughout the Code. *See, e.g.,* 11 U.S.C. § 1129(b)(2)(A)(i)(II); 11 U.S.C. § 1225(a)(5)(B)(ii); 11 U.S.C. § 1325(a)(5)(B)(ii). The purpose of that language as stated above, is to require interest at a rate to account for the "time value of money" during payment plans of significant length. *Southern States,* 709 F.2d at 650 (quoting 1978 U.S.C.C.A.A.N. at 6368). Based on that reasoning, the court adopted *Collier's* "market rate" approach. *Id.* at 651.

The Eleventh Circuit observed:

> The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

*Southern States,* 709 F.2d at 651.

■ An absolute standard for determining market rates of interest has not yet been established. However, *Southern States* and other courts adopting the "market rate" approach have made it apparent that, simply because a statute that affects interest rates is enacted, "it does not bind the judicial system in interpreting the legal standard required for payment of allowed secured claims in a reorganization process." *In re Neff,* 89 B.R. 672, 676 (Bankr.S.D.Ohio 1988); *see also In re Caudill,* 82 B.R. 969, 974–75 (Bankr. S.D.Ind.1988) (holding that in setting interest rate for secured claim under Chapter 12 plan, so as to provide present value, bankruptcy court will look to current yield for

treasury bill or bond, as increased to compensate for forced loan). Consequently, accepting the guidelines set by Section 6621 or Section 1961 as a matter of law is an untenable position. However, merely considering them as evidence of the proper market rate is permissible. *Southern States,* 709 F.2d at 652.

28 U.S.C. § 1961 provides that the cost of funds shall be equal to the fifty-two week United States Treasury Bill auction price. As of the Confirmation Date of the Plan, this rate was 7.02%. However, the Debtor's Plan, in reference to creditors who received deferred cash payments, provided for the cost of funds plus 1%. This gives a rate of interest of approximately 8%. On the other hand, 26 U.S.C. § 6621 provides for the short-term interest rate plus 2% for overpayment of taxes or 3% for underpayment. On the date of confirmation, the rate for underpayment was 9%. Thus, correcting for the additional 1% charged as a penalty, the result is a rate of interest of 8%. Therefore, I hold a rate of interest of 8% compounded yearly from the date the confirmation order became final is commercially reasonable and the IRS' claim, with interest, is due and payable immediately.

A separate order shall be entered in accordance herewith.

DONE AND ORDERED.