**In re Ralph J. COLLINS, Debtor.**

**UNITED STATES of America, Petitioner–Appellant,**

v.

**Ralph J. COLLINS, Defendant–Appellee.**

No. 92–2789.

United States Court of Appeals, Eleventh Circuit.

July 20, 1994.

Gary R. Allen, Chief, Robert W. Metzler and Bruce R. Ellisen, Appellate Section/Tax Div., U.S. Dept. of Justice, Washington, DC, Lyndia Padgett, Asst. U.S. Atty., Tallahassee, FL, for appellant.

Joseph Jacobs, Tallahassee, FL, William VanDercreek, Dallas, TX, for appellee.

Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

At issue in this case is the deductibility of a sum of money which the taxpayer, Ralph J. Collins, paid in settlement of litigation in state court, and also the deductibility of sums which he paid as attorney's fees in connection with the state court litigation. The issue rose in the context of bankruptcy proceedings, as discussed below. The bankruptcy court held in favor of Collins that the amounts were deductible. The district court affirmed. We reverse.

## I. The Facts

Collins filed for bankruptcy in 1975 and was granted a discharge in 1976. Thereafter the trustee[1] began to investigate pre-bankruptcy transfers that Collins had made to a trust he had created in 1974 for the benefit of his children and niece. The trust invested its assets in United Holding Company, a corporation, wholly owned by the trust. The trustee subpoenaed from Collins documents relating to the trust and the transfers to it. Collins failed to comply, and the trustee filed a complaint in bankruptcy court seeking to revoke Collins' discharge because of that failure. Later the trustee filed in the bankruptcy court an application for leave to file in state court a suit against Collins, the trust, and United Holding, asserting that transfers to the trust by Collins should be set aside as fraudulent.

Before the bankruptcy court acted on the trustee's application to sue Collins launched a preemptive strike. He filed in state court a suit seeking a declaratory judgment that the trustee was not entitled to any of the trust assets. He named as plaintiffs United Holding, the trust, and himself. Collins was not a trustee of the trust. As a basis for including himself as plaintiff he alleged that he had fiduciary duties to United Holding and a duty to cooperate with the bankruptcy trustee and that he was doubtful of his rights and duties as fiduciary and in doubt of the ownership of the assets in question.[2] The complaint did not allege that Collins had any personal or business interest in the assets of the trust. Possible revocation of Collins' discharge was an issue addressable in only the bankruptcy court and therefore was not an issue in the state case.

The trustee answered and counterclaimed alleging (as had been set out in his application for authority to sue in state court) that Collins had fraudulently transferred assets to the trust and that some of the transfers were voidable preferences.

Collins and the trustee reached a settlement that was approved by the bankruptcy court. Collins paid $35,000 to the trustee for distribution in the bankruptcy estate. On his tax return he deducted the $35,000 and attorney fees of $69,000 plus, which he claimed related to bankruptcy matters. Subsequently he filed a Chapter 11 bankruptcy petition, and the Internal Revenue Service timely filed in that proceeding a claim for deficiencies arising from the foregoing deductions. The bankruptcy court, after hearing, ruled that Collins was entitled to the deductions and denied the claim of the United States. I.R.S. appealed to the district court and it affirmed with a modification discussed below.

## II. The controlling law.

The place to start is with the controlling statute. 26 U.S.C. § 162(a) allows a deduction for "ordinary and necessary expense paid or incurred ... in carrying on any trade or business." Collins was a developer and manager of real estate and a building contractor.

The seminal case for distinguishing between personal expenses and ordinary and necessary expenses in carrying on trade or business is *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). Gilmore was involved in a divorce proceeding with his wife. She claimed that his controlling stock interests in three corporations of which he was president, managing officer, and from which his income was derived, was community property of which she was entitled to a share. Gilmore attempted to deduct his expenses in this divorce litigation under the predecessor of § 162, 26 U.S.C. § 23(a)(2), as "ordinary and necessary expenses ... incurred during the taxable year ... for the ... conservation ... of property held for the production of income." He claimed that these were business expenses because, if he had not defeated his wife's claim to the stock in the businesses, he would

1. Throughout this opinion unless otherwise indicated "trustee" refers to the trustee in bankruptcy.

2. It is obvious that these allegations were intended to give Collins something akin to standing in a case arising out of a controversy between a family trust (in which he had no interest or status except as grantor) and the bankruptcy court. But, frivolous or not, the allegations have no relation to Collins' income-producing business activities or his business expenses.

have lost his controlling interests in the corporations and his corporate positions, which were his principal means of livelihood.

The Supreme Court took three important actions. It derived a principle from its previous cases, it spelled out what it called the "controlling basic test," and it described what is not a correct test. The principle drawn from previous cases was this:

> The principle we derive from these cases is that the characterization, as "business" or "personal," of the litigations costs of resisting a claim depends on whether or not the claim *arises in connection with* the taxpayer's profit-seeking activities." (Emphasis in original).

372 U.S. at 48, 83 S.Ct. at 629. This principle is a logical one since the subject matter of inquiry relates to deduction of business expenses. The Supreme Court went on to spell out the "controlling basic test" for determining whether an expense is business or personal, and to reject what is not the correct test:

> [T]he origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not under [§ 162]. We find the reasoning underlying the cases taking the "consequences" view unpersuasive. (Emphasis added.)

*Id.* at 49, 83 S.Ct. at 629.

The Court applied what it had set out. The taxpayer's fears of the possible consequences to his fortune—what would happen to his corporate interests and positions—were not even considered. The Court turned to the "determinative question":

> We turn then to the determinative question in this case: did the wife's claims respecting respondent's stockholdings *arise in connection with his profit-seeking activities*? (Emphasis added.)

*Id.* at 51, 83 S.Ct. at 630. It then answered that inquiry:

> [T]he wife's claims stemmed entirely from the marital relationship, and not, under any tenable view of things, from income-producing activity. This is obviously so as regards the claim to more than an equal division of any community property found to exist. For any such right depended entirely on the wife's making good her charges of marital infidelity on the part of the husband. The same conclusion is no less true respecting the claim relating to the existence of community property. For no such property could have existed but for the marriage relationship. Thus none of respondent's expenditures in resisting these claims can be deemed "business" expenses, and they are therefore not deductible under [§ 162].

*Id.* at 51–52, 83 S.Ct. at 630–31.

### III. The application of *Gilmore* to this case.

■ In the present case we must apply *Gilmore* in a situation where bankruptcy proceedings are involved. The bankruptcy court found that in a proximate cause sense there would have been no bankruptcy involving Collins but for his business creditors and, additionally, the payment he made would benefit business creditors who had asserted claims in bankruptcy. The district court followed the same proximate cause analysis.

■ The proximate cause approach does not comport with *Gilmore*, which requires examining the *character* of the claim and its *origin*, i.e., did it *arise in connection with* taxpayer's income-producing activities. The fact of bankruptcy does not establish either character or origin. The most it tells is the identity of the person asserting the claim—the trustee—and the identity of those who will derive some benefit from the payment—business creditors of the bankruptcy estate. Hypothetically, assume that a trustee of a taxpayer's estate sues taxpayer's church to recover a large charitable gift of funds that the trustee claims is fraudulent or voidable, and the taxpayer, to protect his religious convictions and to avoid embarrassment, pays to the trustee from his pocket the amount of the trustee's claim against the church, and the trustee dismisses the suit. The funds paid will benefit business creditors. But no one would seriously assert that the amount paid by the taxpayer was a busi-

ness expense under § 162. That case is no different than the one before us in which taxpayer has paid out of his pocket to procure dismissal of a suit against his family trust in which he has no interest.[3]

### IV. The application of *Dowd*

The bankruptcy court and the district court relied upon *Dowd v. Commissioner,* 68 T.C. 294, 1977 WL 3632 (1977). There are many differences between the instant case and *Dowd* that bear upon proper application of the *Gilmore* test. Dowd was in the coin and currency business. The trustee in bankruptcy objected to his discharge because the records of his business were inadequate and over $200,000 in cash and currency could not be located. Dowd cut a deal to get the objection to discharge withdrawn. His creditors had been paid 40% on their claims. He offered to pay to them directly an additional 15%, if they would not object to his discharge. The creditors agreed, the bankruptcy court approved, and the trustee withdrew his objection to discharge. Dowd sought to deduct from income tax the payments to creditors and the litigation expenses relating thereto. He contended "that these payments were inextricably linked to his trade or business and, therefore, the payment was deductible as 'cost of sales' or as an ordinary and necessary business expense." All of these incidents were business-related. The Tax Court construed the transaction to be one in which Dowd was merely repaying debts he had incurred for cost of goods sold. In contrast, Collins neither negotiated with nor made any deal with business creditors. He did not even purport to be repaying business debts. His payment had no connection with income-producing activities and no connection with business creditors except the fact of bankruptcy. His contention that he paid to protect his discharge has been presented with clarity for the first time on appeal, and in any event the objection to discharge did not spring from his business activities or creditors, and the record indicates that the trustee in bankruptcy was trying to reach the

assets of the family trust, not Collins' personal assets.

*Dowd* is far removed from this case. *Gilmore* controls this case.

Accordingly, we conclude that the origin and character of the expenses at issue are nonbusiness and are not deductible. Therefore, the judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the United States.

REVERSED and REMANDED.

---

**3.** On this appeal Collins seeks to give a business flavor to the payments he made by urging that he was seeking to protect his discharge. The bankruptcy court referred to this, but neither it nor

the district court has relied upon it as a factor in its decision. Moreover, the trustee's complaint seeking to revoke Collins' discharge sprang from Collins' refusal to comply with court processes.