T.C. Memo. 1996-532


UNITED STATES TAX COURT


MICHAEL W. REHTORIK, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 9115-91, 24660-91,   Filed December 2, 1996.
          24661-91.


David M. Garvin, for petitioner Michael W. Rehtorik.

James P. Dawson and Eli J. Dicker, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  Respondent determined deficiencies in

petitioners' joint Federal income taxes and additions to tax for

1984 and 1985 and deficiencies in petitioner Michael W.

---

[1]    Cases of the following petitioners are consolidated
herewith:  Michael W. and Barbara B. Rehtorik, docket No. 24660-
91; and Michael W. Rehtorik, docket No. 24661-91.

Rehtorik's (petitioner's) individual Federal income taxes and additions to tax for 1986 and 1987, as follows:

Michael W. and Barbara B. Rehtorik

|  |  | Additions To Tax | | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1984 | $131,360 | $65,680 | * | $32,840 |
| 1985 | 165,695 | 82,848 | * | 41,424 |

    * 50 percent of interest due on amount of deficiency attributable to fraud.

Michael W. Rehtorik

| Year | Deficiency |
| --- | --- |
| 1986 | $3,337 |

|  |  | Additions to Tax | | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) |
| 1987 | $125,206 | $1,370 | $1,346 | * |

|  | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
| --- | --- | --- | --- |
|  | $73,715 | ** | $31,302 |

    * 50 percent of interest due on amount of deficiency attributable to negligence.

    ** 50 percent of interest due on amount of deficiency attributable to fraud.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement, the primary issues for decision in these consolidated cases are: (1) Whether petitioner is liable for the

fraud and other additions to tax for 1984, 1985, and 1987; and (2) whether petitioner is entitled for 1986 to deduct $6,033 in interest expenses and for 1987 $108,037 in legal expenses. All issues relating to Barbara B. Rehtorik have been settled.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

In 1983, petitioner, as sole shareholder, incorporated Government Securities Corp. (GSC) as a Florida corporation.[2] Until May 1987, petitioner was president of GSC.

In 1984, petitioner incorporated Government Securities Group of America (GSC America) as a Florida corporation and as the parent holding company of GSC. Petitioner was sole shareholder and president of GSC America.

GSC was engaged as a broker/dealer in the purchase and sale for and to investors of Government-backed securities, such as Government National Mortgage Association and Federal National Mortgage Association mortgage-backed securities, and U.S. Government zero coupon bonds.

Separately from GSC's above brokerage activities on behalf of investors, GSC solicited funds from a limited number of individual investors to be invested on behalf of GSC by petitioner and by Oscar F. Gomez (Gomez), vice president and

---

[2]     GSC was originally incorporated under the name of the Federal Government Securities Corp. (FGSC). In 1984, FGSC changed its name to GSC to comply with Federal law.

director of GSC. These funds were referred to in the relevant written materials as "managed accounts". Funds received from investors as managed accounts (managed account funds) were to be invested in various securities to be selected by and at the discretion of GSC, of petitioner, and of Gomez, and apparently were not limited to Government-backed securities.

Managed account funds had the characteristics of loans from the investors to GSC. Receipt of managed account funds was documented by written agreements that were signed by the individual investors, and, on behalf of GSC, by petitioner and Gomez. The written agreements reflected total funds invested, a fixed term for repayment to individual investors of the funds invested, and a stated interest rate. Interest was due monthly.

Under each managed account investment agreement, at the end of a stated fixed term, the term of each managed account investment would be automatically renewed unless the investor gave 30 days' notice of cancellation. Upon cancellation, the principal amount of the investor's managed account funds was to be repaid with any interest due.

Investors expected to be repaid the total principal amount invested in managed accounts. Repayments of principal on some occasions were made, and payments of interest on many occasions were made.

Most of the principal repayments and much of the interest payments that were due managed account investors, however, were

not paid by GSC, by petitioner, or by Gomez.  As explained below, the total principal of all managed account funds that was not repaid by GSC, by petitioner, or by Gomez, was repaid to the investors pursuant to the Securities Investor Protection Act of 1970 (SIPA), Federal legislation that protects investor funds when security brokerage companies are liquidated.

Petitioner and Gomez apparently maintained records relating to the managed account funds.  GSC's internal accounting office, however, did not maintain records of the managed account funds, and GSC's general sales force apparently did not market or sell managed account investments and apparently did not know of the existence of the managed accounts.

The evidence in the record does not reflect the exact amount of managed account funds that were received from investors.  The following schedule reflects Gomez' estimate of total managed account funds that petitioner and Gomez received on behalf of GSC for the years in issue.

| Year | Gomez' Estimate of Total Managed Account Funds Received |
|------|---------------------------------------------------------|
| 1984 | $500,000 to 600,000 |
| 1985 | 500,000 to 600,000 |
| 1987 | 200,000 to 300,000 |

Some managed account funds received from investors were deposited into GSC's corporate bank accounts for use in purchasing Government-backed securities that GSC, in turn, would

resell to investors in the normal course of GSC's retail securities business.

Some managed account funds, along with other funds such as petitioners' substantial salary income, were deposited into bank accounts in petitioner's name, from which accounts funds were used by petitioner for business expenses and investments relating to GSC and also for personal purposes.

The following schedule reflects, for the years in issue, managed account funds that were deposited into GSC's corporate bank accounts, our estimate (based on the evidence before us) of managed account funds that were deposited into bank accounts in petitioner's name, and total deposits into bank accounts in petitioner's name.

|  | Managed Account Funds Deposited Into | | Total Deposits |
| Year | GSC's Bank Accounts | Bank Accounts In Petitioner's Name | Into Bank Accounts In Petitioner's Name |
| --- | --- | --- | --- |
| 1984 | $271,130 | $177,778 | $299,965 |
| 1985 | 226,255 | 158,340 | 312,039 |
| 1987 | 7,000 | 200,000 | 293,212 |
| Total | $504,385 | $536,118 | $905,216 |

At the end of 1986, petitioner hired a new accounting firm to perform for 1986 a yearend audit of GSC's books and records. This accounting firm determined that GSC's books and records were not complete.  In 1987, upon verifying through yet another accounting firm serious errors and omissions in GSC's books and records and on advice of GSC's corporate counsel, petitioner

notified the U.S. Securities and Exchange Commission (SEC) of GSC's accounting problems, and the SEC commenced an investigation of GSC.

The record does not indicate that the SEC investigation established anything illegal about GSC's or petitioner's use or management of managed account funds. Gomez, however, was subsequently prosecuted and pleaded guilty to making certain false representations in connection with the solicitation of managed account funds. The SEC investigation did conclude that GSC's financial situation was not healthy.

On May 12, 1987, either voluntarily or at the insistence of the Securities Investor Protection Corp. (SIPC), a nonprofit corporation created by SIPA, GSC entered into a liquidation proceeding under SIPA in the U.S. Bankruptcy Court for the Southern District of Florida. In that proceeding, a trustee (SIPC trustee) was appointed to liquidate GSC. As part of that liquidation proceeding, managed account investors submitted to the SIPC trustee claims for repayment of managed account funds. Also in that proceeding, the SIPC trustee sought damages against petitioner and Gomez personally on behalf of 28 managed account investors, seeking to recover the principal amount of outstanding managed account funds of these 28 investors, plus interest, costs, and other damages.

In 1987, petitioner hired and paid an attorney $108,037 in legal fees to represent him in GSC's liquidation proceeding and against the claim for damages.

On March 22, 1988, in GSC's liquidation proceeding, petitioner and Gomez signed consent judgments agreeing to pay $573,750 and $701,250 in damages, with interest, respectively, to the SIPC trustee for repayment to managed account investors.

The evidence in this case does not reflect how much, if any, of the above damages were actually paid by petitioner and Gomez. As indicated, however, the SIPC trustee did repay the principal amount of the managed account funds owed to 26 of the managed account investors.

Use of Managed Account Funds Deposited
into Bank Accounts in Petitioner's Name

From 1984 through 1987, with funds deposited into bank accounts in his name, including managed account funds, petitioner paid certain GSC business expenses. For example, in 1984, GSC entered into certain investment hedge transactions to offset risks associated with GSC's purchase and subsequent holding of mortgage-backed securities for sale to GSC customers. Petitioner made all decisions relating to hedge transactions entered into on behalf of GSC, and petitioner purchased securities with funds withdrawn from the bank accounts in his name for the above purpose of hedging GSC's investment risks.

From 1984 through 1987, petitioner also made certain repayments to investors of principal and payments of interest with respect to managed account funds, and petitioner used funds withdrawn from the bank accounts in his name for such repayments of principal and payments of interest.

Also, in 1987, with funds withdrawn from the bank accounts in his name, petitioner purchased for and in the name of GSC $37,725 in gold Krugerrands, which Krugerrands were later sold at a profit that GSC received.

On February 27, 1987, after having received $100,000 from a new managed account investor and after depositing such $100,000 into one of the bank accounts in his name, petitioner purchased with funds withdrawn from the same bank account into which the $100,000 had been deposited a cashier's check for $100,000 that was endorsed over to GSC America. This $100,000 was then transferred from GSC America to GSC and was apparently used for GSC's expenses and investments.

The following schedule reflects and, where necessary, estimates for each year the amount of GSC's expenses that were paid with funds withdrawn from the bank accounts in petitioner's name, including funds used to participate in hedge transactions, funds used to pay principal and interest to managed account investors, funds used to purchase gold Krugerrands, and the $100,000 that in February of 1987 petitioner received from a

managed account investor and then transferred through GSC America to GSC:

| | Years in Issue | | |
| Purpose | 1984 | 1985 | 1987 |
| --- | --- | --- | --- |
| Hedge transactions | $114,025 | $ 0 | $ 0 |
| Payments of principal and interest on managed account funds | 58,380 | 25,334 | 45,865 |
| Purchase of Krugerrands | 0 | 0 | 37,725 |
| $100,000 transfer | 0 | 0 | 100,000 |
| Total | $172,405 | $25,334 | $183,590 |

Tax Returns

The following schedule reflects the date filed, timeliness, gross income reported, and filing status relating to each of petitioner's Federal income tax returns for 1984 through 1987.

| Return | Date Filed | Filed | Gross Income Reported | Filing Status |
| --- | --- | --- | --- | --- |
| 1984 | 8/15/85 | timely | $147,000 | married filing jointly |
| 1985 | 6/13/86 | untimely | $174,900 | married filing jointly |
| 1986 | 2/26/88 | untimely | $254,573 | married filing separately |
| 1987 | 4/7/89 | untimely | $83,600 | married filing separately |

The above gross income reported on the tax returns for each year consisted primarily of petitioner's salary income from GSC and Barbara B. Rehtorik's salary income from her employment as manager of a retail clothing store.

Petitioners did not include as income on their 1984 and 1985 joint Federal income tax returns, and petitioner did not include as income on his 1987 individual Federal income tax return, any

managed account funds deposited into the bank accounts in petitioner's name.

On his 1986 individual Federal income tax return, petitioner claimed $47,802 as an interest expense deduction relating to a home mortgage.

On his 1987 individual Federal income tax return, petitioner claimed $108,037 as an ordinary business expense deduction for legal fees relating to the claim against him for damages in the GSC liquidation proceeding.

Petitioner attached to his 1987 Federal income tax return a disclosure statement reflecting tax advice that petitioner had received from his tax accountant that the $573,750 in managed account funds reflected in the consent judgment against petitioner in GSC's liquidation proceeding should not be treated as income to petitioner but as loans that GSC and petitioner intended to repay to managed account investors.

Respondent's Audit

On audit, using total deposits made into the bank accounts in petitioner's name (including deposits of managed account funds) of $299,965, $312,039, and $293,212, for 1984, 1985, and 1987, respectively, respondent determined that petitioner received and was taxable on managed account funds in the following amounts:

| Year | Unreported Income |
|------|-------------------|
| 1984 | $287,081 |
| 1985 | 275,446 |
| 1987 | 255,290 |

At trial and in her briefs, respondent has made revisions to the above determination of unreported income, as reflected below:

| Year | Respondent's Revised Determination of Petitioner's Unreported Income |
|------|-------------------|
| 1984 | $263,054 |
| 1985 | 192,399 |
| 1987 | 244,449 |
| Total | $699,902 |

For 1984, 1985, and 1987, respondent did not allow as business expenses or otherwise give petitioner credit against any of the bank deposits that respondent treated as unreported taxable income to petitioner, any of the investments by petitioner in hedge transactions, repayments of principal and interest to managed account investors, transfers to GSC, or other amounts that petitioner paid on behalf of GSC.

On February 13, 1991, respondent's notice of deficiency for 1986 was mailed to petitioner in which notice $6,033 of claimed interest expenses was disallowed.

On July 29, 1991, respondent's notices of deficiency for 1984, 1985, and 1987 were mailed to petitioner; in the notice for 1987 $108,037 of claimed legal expenses was disallowed.

In respondent's notice of deficiency for 1984 and 1985, respondent also determined that the underpayments of tax were due to fraud without which respondent's assessment of deficiencies for 1984 and 1985 would be barred by the period of limitations under section 6501.

For 1987, respondent also determined that the underpayment was due to fraud or, in the alternative, negligence.

Further, for 1987, respondent determined additions to tax for substantial understatement and failure to timely file.

OPINION

Fraud for 1984, 1985, and 1987

Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Clayton v. Commissioner, 102 T.C. 632, 646 (1994). To establish fraud, respondent must prove for each year: (1) That a taxpayer's Federal income tax return, as filed, reflected an underpayment of tax, and (2) that some part of the underpayment was due to fraudulent intent. Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, supra at 646; Recklitis v.

<u>Commissioner</u>, 91 T.C. 874, 909 (1988); <u>Stone v. Commissioner</u>, 56 T.C. 213, 220 (1971).

Funds received by a taxpayer through misappropriation or embezzlement constitute taxable income to the taxpayer. <u>James v. United States</u>, 366 U.S. 213, 219 (1961).

Funds received as loans, however, are not properly treated as taxable income. <u>James v. United States</u>, <u>supra</u> at 219. If there exists between a taxpayer who receives funds and the provider of funds a good-faith expectation that the funds are to be repaid and an obligation to do so, the funds in the hands of the taxpayer will be treated as nontaxable loan proceeds. See <u>Collins v. Commissioner</u>, 3 F.3d 625, 631 (2d Cir. 1993), affg. T.C. Memo. 1992-478. Funds received by a taxpayer as an agent or conduit of a corporation are not treated as taxable income. See <u>Lashells' Estate v. Commissioner</u>, 208 F.2d 430, 435 (6th Cir. 1953), affg. in part, revg. in part and remanding a Memorandum Opinion of this Court; <u>Ishijima v. Commissioner</u>, T.C. Memo. 1994-353.

With regard to fraudulent intent, respondent must prove that petitioner intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. <u>Clayton v. Commissioner</u>, <u>supra</u> at 647; <u>Parks v. Commissioner</u>, 94 T.C. 654, 661 (1990); <u>Hebrank v. Commissioner</u>, 81 T.C. 640, 642 (1983). Fraud may be proven by circumstantial evidence because direct evidence of fraud is generally not available. <u>Clayton v.</u>

Commissioner, supra at 647; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

As indicated, respondent argues that all managed account funds deposited into bank accounts in petitioner's name during the years in issue should be treated as unreported taxable income to petitioner. Respondent argues that by depositing managed account funds into bank accounts in his name, petitioner misappropriated managed account funds from either the managed account investors, from GSC, or from both.

Petitioner argues that managed account funds deposited into bank accounts in his name constituted loans from managed account investors to GSC, that petitioner did not misappropriate any managed account funds either directly or through GSC, and that petitioner used managed account funds deposited into bank accounts in his name as an agent for GSC, and to pay expenses and to make purchases of securities on behalf of GSC.

The evidence before us establishes that, from the standpoint of managed account investors and GSC, managed account funds transferred by investors to GSC, to petitioner, and to Gomez, were regarded as funds loaned from the investors to GSC. Managed account investors signed written agreements with GSC that provided for repayment of principal and interest, and managed account investors did expect to be repaid all managed account funds and interest thereon. The fact that some officers and employees of GSC did not know of the managed account funds does

not eliminate GSC's obligation, as agreed to by petitioner and by Gomez, as senior officers of GSC, with regard thereto.

Petitioner deposited managed account funds into GSC's bank accounts and into bank accounts in his name. Those funds, including those deposited into bank accounts in petitioner's name were in large part used for the benefit of GSC. Managed account funds deposited into bank accounts in petitioner's name were used by petitioner to pay principal and interest owed to managed account investors, to pay various business expenses of GSC, and to purchase securities for GSC that represented hedge transactions.

As indicated, for 1984, 1985, and 1987, petitioner deposited $177,778, $158,340, and $200,000, respectively, in managed account funds into bank accounts in his name. The evidence establishes that for 1984, 1985, and 1987 petitioner withdrew at least $172,405, $25,334, and $183,590, respectively, from the same bank accounts and used these funds for GSC's benefit.

With regard to the balance of managed account funds that petitioner deposited into bank accounts in his name, which the evidence does not establish that petitioner used for GSC's benefit, respondent has not established by clear and convincing evidence that petitioner was not holding these funds as loans and as an agent for GSC, nor has respondent established by clear and convincing evidence that petitioner misappropriated these funds for his personal use.

As indicated, the record does not establish that petitioner used any managed accounts funds that were deposited into the bank accounts in his name for personal purposes. There is no evidence that such funds were used by petitioner to take vacations, purchase extravagant items, or entertain himself or others. We note that petitioners reported on their tax returns significant salary income for the years in issue, and the evidence establishes that much of this salary income was deposited into the bank accounts in petitioner's name and that the amount of petitioners' salary deposits appears to have been sufficient to support petitioners' lifestyle.

Based on the evidence before us, and for purposes of our decision as to petitioner's liability for the fraud additions to tax, on which respondent has the burden of proof by clear and convincing evidence, we conclude that respondent has not established that petitioner was not an agent for GSC in his receipt of managed account funds, nor that petitioner embezzled or misappropriated for his personal use any managed account funds during 1984, 1985, and 1987. Accordingly, for purposes of the fraud additions to tax, we conclude that managed account funds deposited into the bank accounts in petitioner's name should not be treated as taxable income to petitioner.

For 1984, 1985, and 1987, because respondent has not established by clear and convincing evidence that petitioner

underreported his income, one of the required elements of the fraud addition to tax is not present.

In particular for 1984 and 1985, because respondent has failed to prove fraud, the assessment of any tax deficiency and additions to tax for those years is barred by the statute of limitations.[3]  Sec. 6501(a), (c)(1).

Unreported Income for 1987

For 1987, in spite of our conclusion that fraud has not been established, respondent's assessment of a tax deficiency would not be barred by the 3-year period of limitation under section 6501(a), and we must decide whether petitioner should be charged with $200,000 in unreported income relating to the managed account funds deposited into the bank accounts in his name.[4]  On this issue for this year, petitioner has the burden of proof by a preponderance of the evidence.  Rule 142(a).

---

[3]     We note that respondent has not raised the 6-year period of limitations under sec. 6501(e)(1)(A) for 1984 and 1985.  Because respondent failed to raise the 6-year period of limitations in pleading, amended pleading, or briefs, we shall not consider its application.  See Estate of Rosenberg v. Commissioner, 86 T.C. 980, 984 n.1 (1986), affd. without published opinion per curiam 812 F.2d 1401 (4th Cir. 1987); Markwardt v. Commissioner, 64 T.C. 989, 997-998 (1975).

[4]     Respondent determined that $244,449 in managed account funds was deposited into bank accounts in petitioner's name.  On the evidence, we have found that the correct amount of managed account funds deposited into bank accounts in petitioner's name was $200,000.

As indicated, funds received by a taxpayer through misappropriation or embezzlement are to be treated as taxable income. James v. United States, 366 U.S. 213, 219 (1961). Funds received as loans, however, are not to be treated as taxable income. See Collins v. Commissioner, 3 F.3d at 631.

Respondent determined that for 1987, the total managed account funds deposited into the bank accounts in petitioner's name should be treated as income to petitioner, not as loan funds invested by managed account investors that had to be repaid, nor as loans from GSC to petitioner. Respondent argues that petitioner misappropriated the managed account funds deposited into the bank accounts in his name from either GSC or from managed account investors.

Petitioner argues that all managed account funds, including those deposited into the bank accounts in his name, constituted loans and were not misappropriated by him from GSC or from managed account investors. Petitioner argues that these funds were used and were intended to be used by him to pay expenses and to make purchases of securities for and on behalf of GSC and to make repayments of principal and interest to managed account investors.

During 1987, with funds from the bank accounts in his name, petitioner paid $83,590 for GSC's benefit, of which $45,865 was paid for principal and interest on managed accounts and $37,725 was paid for gold Krugerrands. Also during 1987 and with funds

from the same bank accounts, petitioner transferred $100,000 to GSC America and then to GSC, and this $100,000 was apparently used for GSC's expenses and investments. With regard to this total $183,590[5] of managed account funds deposited into the bank accounts in petitioner's name in 1987, petitioner has met his burden of proof and has established that such funds were not misappropriated by him, but were used by him as an agent for GSC.

With regard, however, to $16,410 in managed account funds deposited in 1987 into the bank accounts in petitioner's name that was not used by petitioner to repay managed account investors, to purchase gold Krugerrands, nor to make a transfer to GSC, and that was still on deposit in the bank accounts in petitioner's name at the end of 1987, petitioner, who has the burden of proof on this issue, has not adequately established the nontaxability of such funds. With regard to this $16,410, we hold for respondent. We are not persuaded that such funds should be treated as loans to petitioner. We rely primarily on petitioner's burden of proof with regard to this $16,410.

$6,033 Claimed Interest Expenses for 1986 and
$108,037 Claimed Legal Expenses for 1987

With regard to the disallowed $6,033 interest expenses claimed for 1986, petitioner has offered no evidence and has

---

[5] $45,865 plus $37,725 plus $100,000 equals $183,590.

failed to meet his burden of proof.  We sustain respondent's determination on this issue.

With regard to the disallowed $108,037 legal expenses claimed for 1987, legal expenses that arise from personal, nonbusiness matters of a taxpayer do not qualify as business expense deductions.  Commissioner v. Tellier, 383 U.S. 687, 689 (1966); United States v. Gilmore, 372 U.S. 39, 46 (1963); In re Collins, 26 F.3d 116, 117-118 (11th Cir. 1994).

Petitioner's $108,037 in legal expenses that were incurred in 1987 relates to claims instituted against petitioner by the SIPC trustee and involves petitioner's activities as president of GSC and as a fund raiser and purchaser of securities for GSC and for others.

Respondent argues that the legal expenses should be disallowed because they relate primarily to petitioner's alleged misappropriation of managed account funds.  We disagree.  See Commissioner v. Tellier, supra at 688-693.  Authority cited by respondent involves taxpayers subject to criminal charges unrelated to their business activities.  We conclude that the claimed $108,037 in legal expenses is allowable as a business expense to petitioner.

Negligence, Substantial Understatement, and
Failure to Timely File Additions to Tax -- 1987

A taxpayer may avoid liability for additions to tax for negligence under section 6653(a)(1) if a taxpayer reasonably

relies on a competent professional adviser.  United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  The reliance must be reasonable, in good faith, and based upon full disclosure.  Freytag v. Commissioner, supra at 888-889.

Respondent alleges that petitioner was negligent under section 6653(a)(1) for failing to report income on his Federal income tax return for 1987 relating to managed account funds. Petitioner argues that he reasonably relied on his accountant and tax return preparer, and petitioner emphasizes that he disclosed -- to the accountant who prepared his 1987 Federal income tax return and to respondent on his 1987 return -- facts relating to his receipt of managed account funds.

Petitioner reasonably relied on his accountant's tax advice regarding nontaxability of managed account funds, and no evidence in the record suggests that petitioner acted in bad faith with regard to his reporting thereof.  For 1987, we reject respondent's determination of the negligence addition to tax under section 6653(a)(1).

The substantial understatement addition to tax under section 6661(b)(1) does not apply where a taxpayer discloses adequate facts on the tax return to disclose to respondent the nature of the item in question.  See sec. 1.6661-4(b)(2), Income Tax Regs.

Petitioner attached a disclosure statement to his 1987 return disclosing significant facts relating to receipt of managed account funds and his involvement with the liquidation of GSC. We reject respondent's determination of this addition to tax.

A taxpayer is subject to an addition to tax for failure to timely file a tax return unless the taxpayer establishes that the failure to timely file was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1).  Petitioner untimely filed his 1987 Federal income tax return on April 4, 1989, without extension.  Petitioner failed to present evidence showing reasonable cause.  Petitioner is subject to this addition to tax.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.